# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT  CINCINNATI

JAMES BOHANNON,

     Petitioner,    :  Case No. 1:12-cv-542

  - vs -          Chief Judge Susan J. Dlott
               Magistrate Judge Michael R. Merz

WARDEN, Allen/Oakwood
 Correctional Institution,

             :

      Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits.  After review of the Petition, Magistrate Judge Litkovitz ordered a return of writ (Order, Doc. No. 2).  The Return was filed December 6, 2012 (Doc. No. 12).  Petitioner then took three extensions of time to August 19, 2013, to file a reply (Doc. Nos. 13, 15, 17)[1] and the Court eventually received the Reply (Doc. No. 20) on September 30, 2013.  In the meantime, the reference has been transferred to the undersigned (Doc. No. 19).

Bohannon pleads the following Grounds for Relief:

> **Ground One:** the trial court erred to substantial prejudice of the defendant when it forced the Defense to use a peremptory challenge to remove a vireman [sic] who would not commit to fairness and impartiality, thereby violating the accused['s] constitutional right to a fair trial by jury.

---

[1] Although Petitioner certifies he mailed the Reply on August 19, 2013, the date it was due (See Certificate of Service, PageID 1785), the Court doubts the accuracy of the Certificate; it rarely takes six weeks for the United States mail to reach Dayton from Lima, Ohio.

1

**Supporting Facts:** While the prospective juror in the case at bar did not unequivocally state he could not be fair and impartial, his continuing reluctance to commit when pressed by the trial judge is not different than a flat statement that one can be fair and impartial. One is either wholeheartedly sure or one is not. What happened here is a surrender to the concept because of the judge's persistence rather than a sincere commitment. The venireman in question should have been excused for cause.

**Ground Two:** The trial court erred to the substantial prejudice of defendant by failing to make written jury instructions a part of the record.

**Supporting Facts:** Petitioner would submit that since there are [sic] no written record of what the jury had before it when it was deliberating, there was no proof of safeguard in place to ensure it had all the guidance it needed to make a decision. When examining the problem, with a record of written instructions we would indeed know whether the complete and correct elements of each crime were in front of the jury for them to deliberate upon.

**Ground Three:** The trial court erred to the substantial prejudice of defendant when it failed to properly instruct the jury on the elements of Aggravated Robbery.

**Supporting Facts**: Is a jury instruction on Aggravated Robbery fatally flawed when it fails to state that the accused must use or refer to the deadly weapon in question [?] When the trial judge gave his instructions to the jury, he simply said that the petitioner only had to have a firearm. Yet in the Ohio Aggravated Robbery statute, the perpetrator must not only in effect possess the firearm, but must also do one of the actions that follow the conjunctive word "and." A defendant has the right to expect that the trial court will give complete instructions to the jury.

**Ground Four:** The trial court erred to the substantial prejudice of defendant when it entered a conviction based upon insufficient evidence.

**Supporting Facts:** Is there sufficient evidence to convict when alleged victim could not identify the accused [?] Several of the victims could not identify Petitioner or changed their testimony, during proceedings in open court.

**Ground Five:** Trial counsel was ineffective for failing to request and present the testimony of an expert witness on the subject of eyewitness identification.

**Supporting Facts:** In petitioner's case, trial counsel should have called an expert witness on the subject of Eyewitness Identification because of the cross-racial identifications and several instances of the victims either being intoxicated or picking someone else in the photo lineup. The victims at trial changed their testimony doing in-court identifications and showed bias while on the witness stand.

**Ground Six:** The trial court abused it's [sic] discretion in failing to severe [sic] counts thus violating defendant's Sixth and Fourteenth amendment rights.

**Supporting Facts:** Petitioner was indicted with 22 counts for various crimes. Two counts on one indictment and 20 counts on a later indictment. Petitioner filed a motion for severence [sic] of the prejudicial joinder. The court denied this motion. If the counts would have been sevred [sic] Petitioner would not have been convicted. Because of the joinder evidence was allowed in that would not have been if charged and tried separately which prejudiced the petitioner with the jury, which clearly lost it's [sic] way from their questions to the judge on the record.

**Ground Seven:** Trial counsel was ineffective for failing to object to repeated and egregious misconduct by prosecutor during closing arguments, in violation of petitioner's Sixth and Fourteenth amendment rights.

**Supporting Facts:** The prosecutor's perpetual errors in closing were so numerous and blatent [sic] that there is no excuse for trial counsel not to have objected to comments. The prosecutors referred to things outside of evidence, pointed to comments that were never made by victims in open court, and referred to race to inflame the passions of the Eleven member White jury.

**Ground Eight:** The trial court erred when it entered a conviction against the manifest weight of the evidence, or sufficient evidence.

**Supporting Facts**: The trial court erred when it entered a conviction against the petitioner where there was little or no evidence to support the conviction. The victims statement against petitioner either was invalid or false, and didn't support the charged offense.

**Ground Nine**: The trial court erred to the substantial prejudice of the petitioner when it merged allied counts instead of vacating them.

**Supporting Facts:**  The courts erred when they merged counts instead of vacating them as Ohio and United States law says. Petitioner went back for resentencing, where the trial court merged counts into the stronger (allied) (multiplicitous) Count. Petitioner argued at the resentencing that the counts that are merged should have been vacated.

**Ground Ten**:  Petitioner was denied effective assistance of counsel as guaranteed by the U.S. Constitution when trial counsel did not call an alibi witness who could put the defendant at a different location at the time of the crime.

**Supporting Facts:** Petitioner submitted an affidavit of Kathy Dudley, witness and alibi that petitioner was at the bar The Dock Complex on the date of January 9, 2005 when it was alleged he committed the crime against B. S..[2]

(Petition, Doc. No. 1, PageID[3] 18-25.)

## Procedural History

Bohannon was indicted by a Hamilton County grand jury on numerous counts of sexual misconduct of various sorts, aggravated robbery, and kidnapping.  In March 2007 a jury found him guilty on sixteen counts and he was sentenced to an aggregate term of ninety-nine years to life imprisonment.  The convictions were affirmed by the First District Court of Appeals. *State v. Bohannon,* 2010 Ohio App. LEXIS 4278. (Ohio App. 1st Dist. Mar. 11, 2009).[4]  The Ohio

---

[2] The names of all victims have been replaced by initials per Order, Doc. No. 25,  dated October 15, 2013.

[3] Effective with the installation of version 4.1.1 of the software, the Court's electronic filing system (CM/ECF) automatically affixes a distinctive page number (shown in the upper right-hand corner as PageID) to each page of each filed document.

[4] Although this decision was rendered on March 11, 2009, it was not reported by Lexis until September 29, 2010, the same date the Date of Judgment Entry on Appeal in the First Appellate District vacated the sentences and remanded the case for resentencing. 2010-Ohio-4596, 2010 Ohio App. LEXIS 3919.

Supreme Court declined jurisdiction over Bohannon's appeal to it.  *State v. Bohannon,* 122 Ohio St. 3d 1521 (2009).

On August 1, 2008, Bohannon filed a petition for post-conviction relief under Ohio Revised Code § 2953.21.  The trial court denied the petition and the First District affirmed.  *State v. Bohannon,* Case No. C-080955 (Ohio App. First Dist. Aug. 26, 2009)(unreported, copy at Return of Writ, Doc. No. 12-1, PageID 301-304.)

On June 1, 2009, Bohannon filed a *pro se* application to reopen his direct appeal to raise a claim that he received ineffective assistance of appellate counsel when his appellate attorney did not claim error in the failure to merge the kidnapping counts with the underlying counts.  The First District found that assignment of error well taken and remanded the case for resentencing. *State v. Bohannon*, 2010 Ohio 4596, 2010 Ohio App. LEXIS 3919 (1st Dist. Sept. 29, 2010).  On November 15, 2010, Bohannon filed a second application for reopening which the First District denied.  Bohannon appealed to the Ohio Supreme Court which declined to hear the case.

Bohannon was resentenced pursuant to the remand on December 14, 2010, and appealed, raising the claim that the allied offense counts should have been vacated instead of merged.  The First District again affirmed.  *State v. Bohannon,* Case Nos. C-110025, C-110026 (1st Dist. Nov. 23, 2011)(unreported, copy at Return of Writ, Doc. No. 12-2, PageID 529-30.)   The Ohio Supreme Court again declined to exercise jurisdiction.  *State v. Bohannon*, 131 Ohio St. 3d 1399 (2012).

Bohannon filed a second petition for post-conviction relief on a date not discernible from the copy of the record (Doc. No. 12-2, PageID 563).  The trial court dismissed that petition as untimely and an improper successive petition.  The First District Court of Appeals affirmed the dismissal.  *State v. Bohannon*, Case No. C-110458 (Ohio App. 1st Dist. Mar. 2,

5

2012)(unreported, copy at Return of Writ, Doc. No. 12-2, PageID 615-16).  The Ohio Supreme

Court again declined to exercise jurisdiction over an appeal.  *State v. Bohannon*, 132 Ohio St. 3d

1424 (2012).

On February 21, 2012, Bohannon filed an application to reopen his direct appeal from the

resentencing.  The First District denied reopening.  *State v. Bohannon,* Case No. C-110025 (Ohio

App. 1st Dist. Jul 20, 2012)(unreported, copy at Return of Writ, Doc. No. 12-2, PageID 701-03.)

The Ohio Supreme Court again declined to consider an appeal.  *State v. Bohannon*, 133 Ohio St.

3d 1468 (2012).  The instant habeas Petition, which the Warden concedes is timely, was filed

July 16, 2012.

# Analysis

## Ground One:  Fair and Impartial Jury

In his First Ground for Relief, Bohannon alleges the State denied his right to a fair and

impartial jury because the trial judge would not excuse for cause a venireman who would not or

could not say definitively that he could be fair and impartial.

The Warden concedes that Bohannon preserved this claim for merits review in habeas by

raising it as his First Assignment of Error on direct appeal.  The court of appeals decided that

claim on the merits as follows:

> In his first assignment of error, Bohannon contends that the trial
> court should have removed a potential juror for cause because that
> juror could not definitively state that he could be "fair and
> impartial."

A prospective juror who discloses that he cannot be fair and impartial, or that he will not follow the law, may be challenged for cause. [Ohio] Revised Code § 2313.42(J).  The decision whether to remove a potential juror for cause is a matter within the sound discretion of the trial court.  *State v. McGlothin*, 1st Dist. No. C-060145, 2007 Ohio 4707, at P10, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301, syllabus.  Here, the trial court engaged in a thorough discussion with the prospective juror after he had expressed concern over hearing a case about "abuse." There was nothing in that discussion that indicated that the juror would not or could not be fair and impartial in considering the case against Bohannon. Accordingly, the trial court did not abuse its discretion in refusing to dismiss this prospective juror for cause. The first assignment of error is overruled.

*State v. Bohanon,* 2010 Ohio App. LEXIS 4278 *1-2 (1st Dist. Mar. 11, 2009).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Bohannon has conceded Ground One (Response/Traverse, Doc. No. 20, PageID 1762).  It should therefore be dismissed with prejudice.

**Ground Two:  Failure to Include a Copy of the Written Jury Instructions in the Appellate Record**

In his Second Ground for Relief, Bohannon claims the trial court prejudiced his case by

not making written jury instructions a part of the record on appeal.

> In his second assignment of error, Bohannon argues that the trial court committed reversible error in failing to preserve written jury instructions as part of the record for appellate review. See [Ohio] Revised Code § 2945.10(G). Because Bohannon did not object to this alleged error at trial, we review the trial court's failure to maintain written jury instructions for plain error under Crim.R. 52(B). *State v. Perry*, 101 Ohio St. 3d 118, 2004 Ohio 297, 802 N.E. 2d 643 [2004].

> Here, we cannot say that the absence of written instructions from the record amounts to plain error. First, there is no indication in the record that the jury instructions were even reduced to writing. It appears from the record that the oral instructions given to the jury were tape-recorded and that a cassette tape was given to the jury. Second, Bohannon does not argue, nor does the record indicate, that any written instructions deviated from the oral instructions given to the jury. Because Bohannon has not shown how he has been prejudiced by the failure to preserve written jury instructions, we overrule his second assignment of error.

*State v. Bohanon,* 2010 Ohio App. LEXIS 4278 *2-3 (1st Dist. Mar. 11, 2009). In his Response/Traverse, Bohannon says he never knew that the oral instructions were recorded and given to the jury on cassette tape until he read the court of appeals' opinion, so he could not argue about what was on the tape nor that "any instructions deviated from the oral instructions given because they were never reduced to writing." (Doc. No. 20, PageID 1763.) Bohannon asks this Court to review this claim "for due process violations."

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). No United States Supreme Court decision known to this Court has ever required that jury instructions be reduced to writing and that the written instructions be made part of the record on appeal. The Ohio statute in question, Ohio Revised Code §

2945.10(G), has been a part of the Ohio Revised Code since its recodification October 1, 1953, and was part of the Ohio General Code before that.  The statute explicitly says that "The court may deviate from the order of proceedings listed in this section."  It also requires that the instructions be reduced to writing if requested by either party before closing argument begins and there is no indication any such request was made here.  Ground Two does not state a federal constitutional violation.

Moreover, Respondent asserts Ground Two is procedurally defaulted because no contemporaneous objection was made at trial.  Bohannon makes no response to this affirmative defense.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright,* 433 U.S. at 87.

*Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley,* 604 F.3d 958, 965 (6th Cir.), *cert. denied sub nom, Eley v. Hauk,* __ U.S. __, 131 S.Ct. 822 (2010); *Reynolds v. Berry,* 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle,* 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen,* 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros,* 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason,* 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state

10

ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

The First District reviewed this claim for plain error because of the contemporaneous objection rule. Reservation of authority to review in exceptional circumstances for plain error is not sufficient to constitute application of federal law. *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Ground Two should be dismissed with prejudice.


**Ground Three:  Failure to Properly Instruct the Jury on Aggravated Robbery**


In his Third Ground for Relief, Bohannon argues the jury was not properly instructed on the elements of aggravated robbery. Bohannon presented this as his Third Assignment of Error

on direct appeal and the First District decided the claim as follows:

> In his third assignment of error, Bohannon argues that the trial court erred by failing to properly instruct the jury on the elements of aggravated robbery. Specifically, when giving the instructions on aggravated robbery, the trial court failed to properly instruct the jury that the defendant had to "display, brandish, or use" a handgun in the commission of a theft. See [Ohio] Revised Code § 2911.01(A)(1). Instead, the trial court simply instructed the jury that the defendant only had to possess a handgun while committing or attempting to commit a theft offense. Because Bohannon did not object to this improper jury instruction, he has waived all but plain error. Plain error requires that, but for the error, the outcome of the trial clearly would have been otherwise. *See., e.g. State v. Reid*, 1st Dist. No. C-050465, 2006 Ohio 6450, at ¶ 16.
>
> Here, we conclude that, in the absence of the erroneous jury instruction, the outcome of the trial would not have been different. The victims of the aggravated robberies each testified at trial that Bohannon had pointed a small black handgun at them during the commission of the offenses. Furthermore, the issue at trial was not whether Bohannon had displayed, brandished, or used a gun, but whether the victims had properly identified Bohannon as their attacker. Accordingly, we overrule Bohannon's third assignment of error.

*State v. Bohannon*, 2010 Ohio App. LEXIS 4278, *3-4 (1st Dist. Mar. 11, 2009).

As Respondent notes, no objection was made to the instruction and the court of appeals held this failure against Bohannon by only reviewing the claim for plain error. For the reasons given above with respect to Ground Two, this constitutes a procedural default of the claim and Boahnnon has offered no excusing cause of prejudice.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair. *Henderson v. Kibbe,* 431 U.S. 145 (1977). The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the

resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62 (1991), *quoting Cupp v. Naughten*, 414 U.S. 141 (1973). The category of infractions that violate fundamental fairness is very narrow. *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing Dowling v. United States*, 493 U.S. 342, 352 (1990).

Bohannon is correct that his actual use, display, brandishing, of the firearm or reference to it during the course of the robbery was a necessary element of the crime of aggravated robbery and the trial judge should have instructed on that element. Nevertheless, although this element had to be proven, there was ample unchallenged evidence at trial of the actual use or brandishing of a firearm and the contested issue was the identity of the offender. Bohannon points to no federal decisional law holding that failure to instruct on this element is a violation of due process. The cases he cites in his Response/Traverse (Doc. No. 20, PageID 1764) are all cases on direct appeal within the federal system; none of them holds such an instruction is constitutionally required.

Ground Three for relief should be dismissed with prejudice.


**Grounds Four and Eight:  Sufficiency and Manifest Weigh of the Evidence**


In his Fourth Ground for Relief, Bohannon claims he stands convicted on insufficient evidence. He repeats that claim in Ground Eight and adds a claim that the conviction is against the manifest weight of the evidence.

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence.   It held:

In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all

> reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus.  The consequences of the distinction are important for a criminal defendant.  The State may retry a case reversed on the manifest weight of the evidence; retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause.  *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).  In sum, insufficiency of the evidence states a claim under the Fourteenth Amendment, but manifest weight states a claim only under Ohio law which is not reviewable in federal habeas corpus. The Warden correctly asserts that a claim of conviction against the manifest weight of the evidence does not state a claim of violation of the United States Constitution.  Bohannon makes no argument to the contrary and concentrates on showing there was insufficient evidence.

A state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v.

Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of
> judicial deference. First, on direct appeal, "it is the responsibility of
> the jury -- not the court -- to decide what conclusions should be
> drawn from evidence admitted at trial. A reviewing court may set
> aside the jury's verdict on the ground of insufficient evidence only
> if no rational trier of fact could have agreed with the jury."
> *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d
> 311, 313 (2011) (*per curiam*). And second, on habeas review, "a
> federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal
> court disagrees with the state court. The federal court instead may
> do so only if the state court decision was 'objectively
> unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___,
> 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam).*

As to victims D.M.,, J.H.,, D.H., and A.S., Bohannon raised his insufficiency of evidence

claim on direct appeal.  The First District decided this claim as follows:

> In his fourth and final assignment of error, Bohannon contests the
> sufficiency of the evidence underlying his convictions with respect
> to four of the victims. He argues that these four victims – D.M.,
> J.H., D.H., and A. S. -- did not and could not identify Bohannon as
> their attacker.[full names omitted by District Court]
>
> In reviewing the sufficiency of the evidence, we must determine
> whether, after viewing the evidence in a light most favorable to the
> state, any rational trier of fact could have found that all the
> essential elements of the offenses had been proved beyond a
> reasonable doubt. *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574
> N.E. 2d 492, paragraph two of the syllabus; *State v. Roberts*, 1st
> Dist., No. C-040547, 2005 Ohio 6391.   After reviewing the
> record, we hold that there was sufficient evidence presented at trial

17

to demonstrate that Bohannon was the attacker of D.M., J.H., D.H., and A.S..

With respect to D.M., a serologist from the Hamilton County Coroner's Office testified that the semen found in D.M. 's rectum and underwear contained Bohannon's DNA. This was sufficient evidence, despite a lack of identification by D.M. at trial, to show that Bohannon was the person who had raped D.M.. Turning to J.H., we note that J.H. identified Bohannon as his attacker at trial. This was sufficient evidence that Bohannon was J.H.'s attacker. With respect to D.H. and A.S., although they could not identify Bohannon as their attacker, their description of the crimes against them matched the mode of operation used by Bohannon against his other five victims. All the young male victims testified that a black man, wearing dark clothing and a "beanie"-type hat, had approached them late at night, asked them either for a cigarette or if they had any drugs, then displayed a small black handgun (later shown to be a air gun), dragged them to a secluded area, and attempted to fondle or anally rape them. Furthermore, with respect to D.H., he was familiar with handguns and described his attacker's handgun as a Walther-style PPK or "James Bond" handgun. The type of air gun found in Bohannon's home was modeled after a Walther-style PPK.

Concluding that there was sufficient evidence to support the finding that Bohannon had attacked D.M., J.H., D.H., and A.S., we overrule his fourth assignment of error.

*State v. Bohannon*, 2010 Ohio App. LEXIS 4278, *4-6 (1st Dist. Mar. 11, 2009).

Bohannon argues his case as to individual victims and this Report will follow that order. In general, Bohannon argues the evidence as if he were trying to persuade a jury that there was reasonable doubt. He further accuses the court of appeals of not reviewing the whole record. However, on appellate review for sufficiency of the evidence and again on habeas review, the task for the reviewing courts is not to determine if they would have found a defendant guilty on all the evidence presented, but instead to decide if sufficient evidence was presented from which a rational trier of fact could have made a guilty finding.

**J. H.**

The First District found that victim J.H. identified Bohannon at trial. Bohannon argues about the weaknesses in J.H.'s testimony, but does not deny that J.H. identified him at trial, as the court of appeals found. The testimony of a victim is sufficient evidence under *Jackson*.

"[T]his Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008), *citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); see also *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard,* 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted).

**D. H.**

The First District found that D.H. could not identify Bohannon in court, but gave a description of the method of operation of his attacker which matched the method of operation used as to the other five victims in virtually every detail. Bohannon emphasizes the lack of identification, D.H.'s admitted state of intoxication, his admitted poor night vision, and the conflicting accounts he gave the uniformed officer at the scene. Those were all appropriate

arguments to make to the jury, but the test is whether any rational juror could have convicted, and the circumstantial identity evidence is strong.

**D. M.**  After D.M. was anally raped, the DNA in the recovered semen matched Bohannon's DNA.  That is much stronger evidence of identity than eyewitness identification and plainly sufficient.

**A. S.**

The First District also found that A.S. could not identify Bohannon in court, but that there was sufficient evidence based on his description of the *modus operandi* of the offender, just as with D.H..  Here, too, the circumstantial evidence is sufficient.  The description by each victim of the offender method of operation is so detailed and so consistent from victim to victim that it is strong circumstantial evidence of guilt.

**B. S., K. B., and R. C.**

Although Bohannon makes lengthy arguments in his Response/Traverse about the sufficiency of the evidence for convictions as to these three victims, those claims are procedurally defaulted because Bohannon did not raise these claims on direct appeal.  Bohannon did not mention in his Petition that he was raising insufficiency of the evidence claims as to any of these three victims, but of course the crimes were separately committed and the Warden was entitled to notice of which convictions Bohannon was contesting.

Under Ohio law, a claim which can be raised on direct appeal but is not thus raised is

barred from later consideration in the Ohio courts by the doctrine of *res judicata*.  Ohio's doctrine of ***res judicata* in criminal cases**, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).  The Ohio courts have consistently enforced the rule.   *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981).

Grounds Four and Eight should be dismissed with prejudice because as to victims J.H., D.H., D.M. and A.S. the First District's decision is not an objectively unreasonable application of *Jackson*, *supra*, and the claims as to B.S., K.B., and R.C. are barred by procedural default.

**Ground Five:  Ineffective Assistance of Trial Counsel in Failing to Present Expert Witness**

In Ground Five, Bohannon asserts his trial attorney provided ineffective assistance of trial counsel when he failed to request and then present the testimony of an expert on eyewitness identification testimony.  In pleading this Ground for Relief in the Petition, Bohannon cites several instances of trial testimony which recent general research on the subject of eyewitness identification have shown can be problematic, e.g., cross-racial identification, effect of intoxication on perception and memory, etc.

Respondent argues Ground Five is procedurally defaulted.  The Warden asserts (Return of Writ, Doc. No. 12, PageID 89) and Petitioner does not deny that the first time Bohannon made a claim of ineffective assistance of trial counsel for failure to obtain and present such an expert

was in his second[5] Application for Reopening his direct appeal under Ohio R. App. P. 26(B)(Return of Writ, Doc. No. 12-1, PageID 379, *et seq.*)  Ohio R. App. P. 26(B) proceedings are for the exclusive purpose of raising claims of ineffective assistance of appellate counsel. Bohannon recognized this in his second application *Id.* PageID 380).  He then raised this claim as an assignment of error omitted because of the ineffective assistance of appellate counsel. *Id.* PageID 382.  This second application was summarily overruled by the First District.  *Id.* PageID 407.

The record shows that Bohannon never presented his ineffective assistance of trial counsel for failure to call an expert claim to the Ohio courts as an ineffective assistance of **trial** counsel claim.  It was not presented on direct appeal which Bohannon implied it should have been by arguing an ineffective assistance of appellate counsel claim for omitting it.  It was also omitted from his first petition for post-conviction relief under Ohio Revised Code § 2953.21 where, if it depended on evidence outside the record, it should have been pled.

Presenting such a claim as an underlying omitted assignment of error in an application to reopen the direct appeal does not preserve the underlying claim for decision on the merits.  An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments.  *Wogenstahl v. Mitchell*,668 F.3d 307, 338 (6th Cir.  2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001).  "The *Lott* court explained that permitting an Ohio prisoner to raise a substantive claim in a Rule 26(B) motion "would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective

---

[5] Bohannon's first Application for Reopening was filed June 1, 2009. (Return of Writ, Doc. No. 12-1, Exhibit 20, PageID 305, *et seq.*)

counsel." *Id.*

Even if such a claim could be preserved by raising it as an underlying ineffective assistance of trial counsel claim in a Rule 26(B) application, Bohannon would face the further procedural default of having omitted it from his first 26(B) application. Ohio App. R. 26(B) makes no provision for successive applications. *State v. Richardson,* 74 Ohio St. 3d 235 (1996). Indeed, "there is no right to file successive applications for reopening" under App. R. 26(B). *State v. Twyford,* 106 Ohio St. 3d 176 (2005), *quoting State v. Williams,* 89 Ohio St. 3d 179 ¶ 12 Once the issue of ineffective assistance has been raised and adjudicated, *res judicata* bars its relitigation, *State v. Cheren,* 73 Ohio St. 3d 137 (1995), following *State v. Perry*, 10 Ohio St. 2d 175 (1967).

In attempting to meet the procedural default defense, Bohannon argues that he raised this claim in his Petition to Vacate or Set Aside Sentence. (Return of Writ, Doc. No. 12-2, PageID 563, *et seq*.) Bohannon brought that Petition under Ohio Revised Code § 2953.21 at some date in 2009.[6] *Id.* Judge Dewine dismissed the Petition as both untimely and successive and therefore outside the jurisdiction of the Common Pleas Court. (Entry, Return of Writ, Doc. No. 12-2, Ex. 51, PageID 567.)

Effective September 21, 1995, Ohio Revised Code § 2953.23(A) was amended to regulate second or subsequent petitions. The statute provides:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
> (1) Either of the following applies:

---

[6] The Hamilton County Clerk of Court's date stamp at PageID 563 is illegible.

> (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
>
> (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

The statute limits the authority of the trial court to entertain a second or subsequent petition to situations where the petitioner shows he was unavoidably prevented from discovering the new evidence on which he relies or he is relying on a new federal or state right that applies retroactively. *State v. Owens,* 121 Ohio App.3d 34 (1997).

Bohannon claims in his Response/Traverse that he only filed this Petition "after receiving the police reports requested." (Doc. No. 20, PageID 1772.) In the Petition itself he references "Currently Obtained Police Reports." (Petition, Return of Writ, Ex. 50, Doc. No. 12-2, PageID 564.) However, no police reports are attached and the fact that they had only recently been obtained by Bohannon would not have been material because he made no attempt to demonstrate he had been prevented from obtaining them previously. Police offense reports are public records in Ohio, obtainable under the Public Records Act, Ohio Rev. Code § 149.43.

Because Bohannon's referenced Petition was both untimely and successive, he procedurally defaulted in presenting this claim to the Ohio courts by way of post-conviction petition.

In a further attempt to excuse the procedural default, Bohannon says he is claiming

manifest miscarriage of just and actual innocence, which is what he says he claimed in the referenced Petition. (Response/Traverse, Doc. No. 20, PageID 1773.) The "miscarriage of justice" standard, which is sometimes used synonymously with "actual innocence," requires some showing of actual innocence. In other words, they are the same standard, not alternative ways of avoiding a procedural default. *Calderon v. Thompson,* 523 U.S. 538 (1998).

In *Murray v. Carrier,* 477 U.S. 478 (1986), the Supreme Court recognized an exception to the cause and prejudice requirement for a petitioner who could demonstrate actual innocence. However, actual innocence means factual innocence as compared with legal innocence. *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). "A prototypical example of actual innocence in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley,* 505 U.S. 333, 340 (1992). To come within the actual innocence exception to the required showing of cause and prejudice with respect to an abuse of the writ, a habeas petitioner or § 2255 movant must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. That is, the petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt' in the light of the new evidence he or she is tendering. In reaching this conclusion, the habeas court may need to make credibility determinations. *Schlup v. Delo*, 513 U.S. 298 (1995), adopting standard from *Murray v. Carrier*, 477 U.S. 478 (1986).

The question is whether the petitioner presents evidence of innocence "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." The trial courts will be able to resolve the great majority of actual innocence claims routinely without any evidentiary hearing. *Schlup, supra*. "Habeas Corpus and Actual Innocence" (Case Note on *Herrera v. Collins*, 506 U.S. 390

(1993) - 107 Harv. L. Rev. 273 (1993). "[A] claim of actual innocence must be more than simply "colorable" to invoke the *Schlup* gateway." *Pudelski v. Wilson*, 576 F.3d 595, 606 n. 2 (6th Cir. Ohio 2009)(Holschuh, D.J., sitting by designation).

Bohannon has not satisfied the standard of proof of actual innocence required by the Supreme Court in *House v. Bell,* 547 U.S. 518 (2006). In the first place, he has produced no evidence at all – he has not produced a report from an expert witness reacting to the eyewitness identification testimony in this case. But secondly, any such testimony would merely be offered to show that the testimony of the victims is not as strong as the jury may have believed. In other words, it would attack the credibility of evidence already in the case – it is not new evidence.

In sum, Bohannon has not offered adequate cause and prejudice to excuse his procedural default of Ground Five, which should be dismissed with prejudice.


**Ground Six: Failure to Sever Counts**


In his Sixth Ground for Relief, Bohannon claims the trial judge abused his discretion in failing to sever the various counts against him for separate trial. Bohannon asserts that if severance had been granted, he would not have been convicted at all. (Petition, Doc. No. 1, PageID 23.)

The Warden claims that this Ground for Relief is not cognizable in habeas corpus and is in any event procedurally defaulted. (Return of Writ, Doc. No. 12, PageID 97, *et seq.*)

The Warden is technically correct that a trial court's abuse of discretion, in itself, is not cognizable in habeas corpus. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). As a *pro se* litigant, however, Bohannon is entitled to a liberal construction of his pleadings. *Haines v. Kerner,* 404

U.S. 519, 520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993).  In accordance with Haines, the Magistrate Judge will ignore the "abuse of discretion" language and treat this Ground for Relief as alleging an unconstitutional joinder.

However, the Warden's procedural default defense is well taken.  The claim of improper joinder was raised in the trial court and therefore would have been available on direct appeal because it depends on evidence of record.  However, it was not raised on direct appeal and raising it later would have been barred by *res judicata*.  *State v. Perry,* 10 Ohio St. 2d 175 (1967).

Bohannon attempts to avoid the procedural default defense by arguing that "the law the State itself relies on St*ate v. Schaim* [65 Ohio St. 3d 51 (1992)] *citing Drew v. United States,* [331 F.2d 85 (D.C. Cir. 1964)]" shows there was prejudice or a miscarriage of justice." (Response/Traverse, Doc. No. 20, PageID 1776.)  Bohannon misunderstands his burden at this point.  He must show cause for his procedural default in failing to raise this claim on direct appeal and prejudice arising from that default before the habeas court can excuse his procedural default and reach the question on the merits of whether he was prejudiced by the joinder.  He has failed to show, or even attempt to show, cause and prejudice to excuse the default on direct appeal.  His claim of prejudicial joinder obviously does not meet the actual innocence standard.

Ground Six is procedurally defaulted and should be dismissed with prejudice on that basis.

**Ground Seven:   Ineffective Assistance of Trial Counsel for Failure to Object to Prosecutorial Misconduct**

In his Seventh Ground for Relief, Bohannon argues his trial attorney provided ineffective assistance of trial counsel by failing to object to numerous instances of prosecutorial misconduct in closing argument. (Petition, Doc. No. 1, PageID 23.)

The Warden asserts this claim is procedurally defaulted because Bohannon did not raise it on direct appeal and then, when he did raise it in post-conviction, failed to preserve the claim by not appealing on this issue from the denial of the post-conviction petition. (Return of Writ, Doc. No. 12, PageID 104.)

All of Bohannon's responsive argument is directed to how the prosecutor's remarks were prejudicial. (Response/Traverse, Doc. No. 20, PageID 1778-1780.)  The first place he indicates he raised this claim was in his second application to reopen under App. R. 26(B).  *Id.* at PageID 1778.  For the reasons stated above as to Ground Five, a 26(B) application only presents the ineffective assistance of appellate counsel claim, not the underlying ineffective assistance of trial counsel claim and Ohio does not permit second or successive 26(B) applications in any event.

Ground Seven is procedurally defaulted and should be dismissed with prejudice on that basis.


**Ground Nine:  Merge of Allied Offenses Instead of Vacating Them**


In his Ninth Ground for Relief, Bohannon claims that the trial court erred when, on remand, it merged his kidnapping counts with the other counts instead of vacating them. (Petition, Doc. No. 1, PageID 24.)

This claim was presented to the First District Court of Appeals in Bohannon's first

28

Application to Reopen under Ohio R. App. P. 26(B). The court of appeals decided:

**[\*P1]** Following a jury trial, defendant-appellant James Bohannon was convicted of five counts of aggravated robbery, three counts of rape, two counts of gross sexual imposition, and seven counts of kidnapping, each with a sexual-motivation specification. Bohannon's victims were seven young men. The trial court imposed a separate sentence for each conviction, resulting in an aggregate prison term of 99 years. Bohannon appealed his convictions. We affirmed those convictions in March 2009. *State v. Bohannon* (Mar. 11, 2009), 1st Dist. Nos. C-070859 and C-070860, 2010 Ohio App. LEXIS 4278. Bohannon appealed our decision to the Ohio Supreme Court, but that court declined jurisdiction. *State v. Bohannon,* 122 Ohio St.3d 1521, 2009 Ohio 4776, 913 N.E.2d 457.

**[\*P2]** In December 2009, this court granted Bohannon's application to reopen his appeal under App.R. 26(B), holding that Bohannon's appellate counsel had been ineffective in failing to submit assignments of error challenging, under R.C. 2941.25, the trial court's imposition of, and his trial counsel's failure to object to the imposition of, separate prison terms upon the jury verdicts finding him guilty of kidnapping and rape, of kidnapping and gross sexual imposition, and of kidnapping and aggravated robbery, when the paired offenses had been perpetrated upon the same victim.

**[\*P3]** In the reopened appeal, Bohannon brings forth a single assignment of error, challenging the trial court's imposition of separate prison terms upon jury verdicts finding him guilty of allied offenses of similar import. This challenge is well taken.

**[\*P4]** Bohannon was found guilty and sentenced for both kidnapping and rape in connection with three armed rapes. He was also found guilty and sentenced for kidnapping, aggravated robbery, and gross sexual imposition in connection with the two armed robberies involving sexual contact. Finally, he was found guilty and sentenced for both kidnapping and aggravated robbery in connection with two armed robberies not involving sexual contact. Bohannon maintains that sentencing him for all the allied offenses charged with respect to each victim was precluded by R.C. 2941.25. We are constrained to agree.

**[\*P5]** Under R.C. 2941.25, a defendant who commits two or

more allied offenses of similar import can only be sentenced for one offense. But if allied offenses are committed with a separate animus, the defendant may be sentenced for each offense. [Ohio] R.C. 2941.25.

[*P6] For purposes of determining whether R.C. 2941.25(A) precludes sentencing on allied offenses, the Ohio Supreme Court has held that (1) kidnapping and rape are allied offenses of similar import. [FN4]*See State v. Donald* (1979), 57 Ohio St.2d 73, 74-75, 386 N.E.2d 1341, syllabus; accord *State v. Adams*, 103 Ohio St.3d 508, 2004 Ohio 5845, 817 N.E.2d 29, P89-95., (2) kidnapping and aggravated robbery are allied offenses of similar import [FN5]See *State v. Winn*, 121 Ohio St.3d 413, 2009 Ohio 1059, 905 N.E.2d 154, P25., and, (3) kidnapping and gross sexual imposition are allied offenses of similar import.[FN6] *See State v. Brown* (1984), 12 Ohio St.3d 147, 12 Ohio B. 186, 465 N.E.2d 889.But the supreme court has also established guidelines to determine whether kidnapping and another offense were committed with a separate animus so as to permit separate punishments under R.C. 2941.25(B). In *State v. Logan,* the court held that "[w]here the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions. [FN7]*State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, syllabus; accord *State v. Fears*, 86 Ohio St.3d 329, 344, 1999 Ohio 111, 715 N.E.2d 136 (citing Logan to hold that when a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime).

[*P7] In *Logan,* the court found no separate animus to sustain separate sentences for rape and kidnapping, where, after the victim had refused to accept some pills, the "defendant produced a knife, held it to her throat, and forced her into an alley. Under such duress, she accompanied him down the alley, around a corner, and down a flight of stairs, where he raped her at knifepoint." *Logan, supra*, at 127.

* * * *

[The court then compared the facts of the offenses as to each victim.]

30

\* \* \* \*

[*P15] Bohannon was found guilty and sentenced for both kidnapping and robbing BS. BS testified that he had been walking home when Bohannon ran up to him, pointed a gun at him, and started tugging on BS's coat, trying to empty the coat's pockets. Bohannon tried to pull BS to the side of a house, but BS began screaming, and the house's occupant came outside, causing Bohannon to flee.

[*P16] The facts demonstrate that, although Bohannon moved each victim to a more secluded area to rob and/or sexually attack him, the movement was merely incidental to the underlying crime. In each instance, the movement of the victim was not substantial because Bohannon had not taken the victim far from where Bohannon had found him.

[*P17] Because, with respect to each victim, kidnapping was an allied offense of similar import to the other charged offenses and was not committed separately or with a separate animus as to each offense, the trial court erred in sentencing Bohannon for kidnapping and the other charged offenses. Accordingly, we sustain the assignment of error, vacate the sentences, and remand the case for resentencing. In all other respects, the trial court's judgment is affirmed.

Sentences vacated and cause remanded.

*State v. Bohannon*, 2010 Ohio 4596, 2010 Ohio App. LEXIS 3919 (1st Dist. Sept. 29, 2010).

As can be easily seen from the First District decision, what Bohannon presented to that court was a state law question: what is the proper disposition of offenses on which there has been a conviction but which are found to be allied offenses of similar import? That is purely a question of interpretation of Ohio Revised Code § 2941.25. The claim that merging rather than vacating the kidnapping charges violated the Double Jeopardy Clause was simply not presented to the Ohio courts and may not be raised for the first time in federal habeas corpus.

Ground Nine should be dismissed with prejudice.

31

**Ground Ten:   Ineffective Assistance of Trial Counsel for Failure to Present an Alibi Witness**

In his Tenth Ground for Relief, Bohannon asserts he received ineffective assistance of trial counsel when his attorney failed to present Kathy Dudley as a witness to his presence at a bar called The Dock Complex on January 9, 2005, at the time it was alleged he committed offenses against B.S.. (Petition, Doc. No. 1, PageID 25.)

Bohannon asserts this claim was raised in his petition for post-conviction relief filed August 1, 2008. (Return of Writ, Doc. No. 12-1, Ex. 11, PageID 255, *et seq.*)  The claim in question appears as Claim Number Two (PageID 257).  The Petition is supported by the July 23, 2008, Affidavit of Kathy Dudley who avers that she was indeed with Bohannon on January 9, 2005, as alleged.  *Id.* at PageID 260.  She further avers "James Bohannon's Trial Attorney was informed of this information and did not call us [sic] to be witnesses in James Bohannon's Defense during trial.  *Id.*

The trial judge filed findings of fact and conclusions of law dismissing all four claims made in the post-conviction petition. (Findings, Ex. 13 to Return of Writ, Doc. No. 12-1, PageID 266-67.)  Bohannon appealed and argued that his trial attorney had not sufficiently investigated Ms. Dudley's potential testimony so as to make his decision not to call her one of trial strategy. (Appellate Brief, Return of Writ, Ex. 15, PageID 271, et seq.)  The court of appeals rejected the trial court's *res judicata* finding, but upheld its conclusion that the Dudley Affidavit did not include "evidence setting forth sufficient operative facts demonstrating a substantive ground for relief [b]ecause Dudley's affidavit did not provide an alibi for the time of the crimes [against B.S.].  The court held:

> An alibi provides a defense to a crime "based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time. [Footnote omitted] The record before us does not reflect the distance between the crime scene and the bar where Dudley placed Bohannon "on the night of January 9, 2005." Dudley did not specify in her affidavit the hours that night during which she could account for Bohannon's presence in the bar. She did not provide the photograph that she alleged had been "taken that night that is time and date stamped. [Footnote omitted.] Nor did she specify what the photograph depicted or what time it had been taken. Because Dudley could not place Bohannon in the bar, instead of in Lower Price Hill, at the time of the alleged crimes, her affidavit could not be said to have demonstrated the physical impossibility of Bohannon's guilt. Thus, Bohannon failed to demonstrate a reasonable probability that, but for his counsel's failure to call Dudley to testify, the result of the trial would have been different.

*State v. Bohanon,* Case No. C-080955 (1st Dist. Aug. 26, 2009)(unreported, copy at Return of Writ, Doc. No. 12-1, PageID 301, et seq.)

Respondent asserts that this claim is procedurally defaulted by Bohannon's failure to appeal to the Ohio Supreme Court. (Return of Writ, Doc. No. 12, PageID 110.)  In his Response/Traverse, Bohannon admits that this is so and attaches a letter from a Deputy Clerk of the Ohio Supreme Court showing that his attempted appeal was filed three days late. (Doc. No. 20, PageID 1782,  1786.)

The Sixth Circuit has held that the Ohio Supreme Court's forty-five day limit on filing an appeal is an adequate and independent state ground of decision.  *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004).  Because he failed to appeal to the Ohio Supreme Court within forty-five days of the decision of the court of appeals on this claim, he has procedurally defaulted it.

Ground Ten should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

October 4, 2013.

s/ <em>Michael R. Merz</em><br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).